UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Crim. No. 25-435 (SRN)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>TYLER MAXON AVALOS,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **GOVERNMENT'S TRIAL BRIEF** |

The United States of America, by and through its attorneys, Daniel N. Rosen, United States Attorney for the District of Minnesota, Joseph S. Teirab, First Assistant United States Attorney, and David B. Green, Assistant United States Attorney, hereby submits its Trial Brief in the above captioned case. The brief summarizes the charge, the facts the government expects to establish at trial, and the government's anticipated evidence.

## I. THE CHARGE

On January 29, 2026, a grand jury returned a superseding indictment against the defendant, Tyler Maxon Avalos.[1] (ECF No. 32). The sole count charges Avalos with transmitting an interstate threat to injure the person of

---

[1] Avalos was initially charged by Complaint on October 16, 2025, and then by Indictment on November 13, 2025.

another, in violation of 18 U.S.C. § 875(c). The case is set for a jury trial on November 2, 2026.

## II. BACKGROUND AND ANTICIPATED FACTS AT TRIAL

### A. TikTok User Reports Threatening Post to Law Enforcement

On October 9, 2025, a known TikTok user in Michigan observed a post threatening the sitting Attorney General of the United States. The user was concerned enough by the post that he submitted a report to the FBI National Threat Operations Center (NTOC). The NTOC is a central intake for all telephone and electronic tips from the public to the FBI. It is staffed by threat intake examiners who evaluate the information from tips and calls and determine where to send the information received for further law enforcement action, if appropriate.

The TikTok user explained in his report to the FBI that the threatening post was "[i]mposing a hit on Pam bondi for $45,000 posting it on tiktok his user name is @liminalvoidslip."

### B. The Threatening Post

After the NTOC received the report about the "hit" on Pam Bondi, investigators obtained a screenshot of the post, which was posted by the TikTok user "@liminalvoidslip." As seen below, the threatening post has a photograph of then-Attorney General Pam Bondi with a sniper-scope-style crosshair imposed on her forehead. The caption of the post reads, "WANTED:

Pam Bondi" / "REWARD: 45,000" / "DEAD OR ALIVE" / "(PREFERABLY DEAD)". Additionally, Avalos' account posted a comment below the depiction that reads "*cough cough*" / "when they don't serve us then what?"




Investigators observed various symbols associated with anarchism on Avalos' TikTok page; additionally, his account had a link to an "Anarchist FAQ" book pinned to his page. The case agent is expected to testify that, based on his training and experience, "anarchism" is a political philosophy and

movement that seeks to abolish all institutions that perpetuate authority, coercion, or hierarchy, primarily targeting the state and capitalism. Anarchism advocates for the replacement of the state with stateless societies.

### C. Identification of Avalos as the Poster and User of the @liminalvoidslip TikTok Account

Law enforcement used legal process to link Avalos to the @liminalvoidslip TikTok account. First, investigators used an emergency disclosure request to TikTok to obtain subscriber information for the @liminalvoidslip account. According to TikTok, the account was created using a Samsung Galaxy cell phone, model number SM-S916U. The email address associated with the TikTok account was screamingmeowvoid@gmail.com.

Investigators then obtained subscriber and IP information for the screamingmeowvoid@gmail.com gmail account. The account was associated with another gmail account, tyler.avalos1995@gmail.com. An investigator noted that the linked gmail account name corresponds to the defendant's first name, last name, and birth year. Additionally, the cellular device associated with the screamingmeowvoid@gmail.com account matched the Samsung device model used by the @liminalvoidslip TikTok account.

An internet service provider reported that the IP address used to sign up for the @liminalvoidslip TikTok account returned to a subscriber "Tyler Avalos" with a known address in St. Paul, Minnesota. IP data associated with

Avalos' TikTok account shows that throughout the day on the date of the threatening post, October 9, 2025, the @liminalvoidslip TikTok account was accessed using this same IP address—73.242.61.241—that is registered to Avalos at his known address in St. Paul, Minnesota.

Investigators reviewed Avalos' criminal history and learned he has a multi-state conviction history including a July 2022 felony stalking conviction from Dakota County, Minnesota, and an August 2016 felony third-degree domestic battery from Polk County, Florida, among several other misdemeanor domestic assault convictions.[2]

### D. Further Investigation by FBI

After learning that the threatening post was linked to Avalos, the FBI conducted surveillance and observed Avalos exiting an apartment building that was listed as the billing address for Avalos' internet service provider account. FBI agents subsequently executed court-authorized searches of Avalos' TikTok and Facebook accounts. The searches revealed various indicia that Avalos was the user of the accounts. For instance, his @liminalvoidslip TikTok account included numerous "selfie" style videos with Avalos commenting on a variety of topics.

---

[2] If Avalos choses to testify, the government will seek to impeach him with his prior felony convictions. His release date for both convictions is within ten years. The Government argues in a separately-filed motion in limine that these convictions are proper impeachment evidence under Fed. R. Evid. 609(a)(1)(B).

Law enforcement also seized multiple electronic devices pursuant to a federally issued search warrant. Several of the devices were forensically extracted by the FBI. Of particular note, an FBI Senior Digital Forensic Examiner will testify regarding the chronological events that occurred on Avalos' Samsung cell phone, which was used to create the threatening social media post pertaining to former Attorney General Pam Bondi. The FBI expert will explain that by reviewing the device's chrome internet browser history, chrome internet browser download history, files related to photo editing, activity related to an application that appeared to be a meme generator, and other materials, she noted there was a short span of time on the defendant's Samsung cell phone in which the user appears to have created the threatening image which has a visual likeness to the threatening TikTok post.

**E. The Circumstances in which the Threat was Made**

In making its decision regarding whether a reasonable recipient would interpret a communication as a threat, "the communication must be viewed in textual context and also in the context of the totality of the circumstances in which the communication was made." *United States v. Mabie*, 663 F.3d 322, 331 (8th Cir. 2011).

Here, Avalos' posted his threatening communication—with a crosshairs on the Attorney General's forehead—following several highly publicized politically or ideologically motivated assassinations. Avalos posted his threat

against the Attorney General on October 9, 2025. About one-month before, on September 10, an assassin fatally shot prominent political activist Charlie Kirk at a campus appearance. Several months before that, in June 2025, Minnesota Speaker of the House Melissa Hortman and her husband Mark Hortman were assassinated in their home along with their pet golden retriever; another state legislator and his spouse were also shot and severely injured in their home. About six months prior, the CEO of United Healthcare was fatally shot in a targeted attack by Luigi Mangioni. And prior to that, in July 2024 President Donald Trump survived an attempted assassination while speaking at a campaign event.

The evidence at trial will show that Avalos was well aware when he made his threat against the Attorney General that the country had experienced a wave of completed and attempted political assassinations. Indeed, he used both his TikTok and Facebook accounts to engage with, promote, and post content that celebrated the killing of Charlie Kirk. His accounts also made reference to Luigi Mangione, the convicted killer of the healthcare CEO. For instance, in one Facebook post, Avalos' account posted an image of a sticker reading "be the Luigi you want to see in the world" followed by an anarchist symbol.




Avalos' TikTok account posted various comments in which he appeared to advocate violence and explained his view that violence may be needed to "remove fascists":

- "I bet if politicians got kirked they'd start acting right"
- "start hunting bitch, oh wait you're a pussy. lmk when you're in st paul next you can join kirk"
- "do you expect to remove fascists from power without bloodshed"

In a similar vein, law enforcement's review of Avalos' phone uncovered other materials—which are the subject of separately-filed motion in limine to admit the evidence pursuant to Fed. R. Evid. 404(b)—in which Avalos referenced the "targeting" of CEOs and advocated for another CEO to be "next

on the list." In one video narrated by Avalos, he noted the location where he believed a tech CEO lived with his wife and child, and said, "Since we got the brave souls that are targeting CEOs, I think that he should be next on the list, because obvious reason. Don't disappoint please…"

## b. III. GOVERNMENT'S ANTICIPATED EVIDENCE

The Government anticipates calling approximately five, and as many as ten, witnesses, who include: (1) the individual who reported the threatening TikTok post to the FBI; (2) law enforcement witnesses who assisted with the investigation and search of Avalos' residence; (3) an expert witness from the FBI who completed the forensic examination of Avalos' devices; and, (4) the case agent.

The Government expects that witness testimony will establish how another TikTok user observed the threatening post, and why he decided to report the post to law enforcement. Witnesses will then describe how the investigation developed Avalos as a suspect and located his residence in Saint Paul, Minnesota. Law enforcement witnesses will describe searches of Avalos' residence, devices, and social media accounts. They will also describe the nature of the TikTok and Facebook social media applications and where data from those platforms is stored. Additionally, the FBI expert digital forensic examiner will describe how she forensically examined electronic devices seized from Avalos and identified items of evidentiary value, including details about

how the threatening post appears to have been created on Avalos' Samsung cellular phone.

Currently, the Government's expects to present several dozen exhibits, including images of Avalos, screenshots of his social media posts (including the charged threat) and profiles, images and videos associated with his social media accounts, direct messages sent on TikTok, threat reporting data, subscriber information associated with Avalos' TikTok, Facebook, Google, and Comcast accounts, images from the search warrant execution at his residence and review of his devices, excerpts from the extraction completed from Avalos's Samsung cellular phone, and the physical Samsung cellular phone.

The Government may rely on Fed. R. Evid. 902(11) to introduce one of Avalos' jail calls as well as portions of the data produced by Google, Comcast, Facebook, and TikTok pursuant to a court-authorized search warrant or other legal process.

If Avalos elects to testify, the government will seek to impeach him based upon his prior felony convictions pursuant to Fed. R. Evid. 609(b), as explained in the government's separate motion in limine on the subject. If he testifies, the Government will seek to admit certified copies of his conviction records pursuant to Fed. R. Evid. 902(4).

If the defense objects to introducing the materials described above based on Rule 902 certifications, the Government could expand its witness list to

establish the foundation for these items, but is hopeful to obviate the need for such an unnecessary lengthening of trial.

## III. Procedural Issues

### A. Transcripts

The United States intends to play a transcript alongside certain media exhibits that contain Avalos' statements, admissible under Fed. R. Evid. 801(d)(2)(a). It is well-established that the Court has wide discretion to allow the use of such transcripts to aid the jury in listening to recorded conversations. *See United States v. Frazier*, 280 F.3d 835, 849 (8th Cir. 2002) ("The decision to permit the use of transcripts to aid the jury in listening to tape-recorded conversations lies within the sound discretion of the district court."); *see also United States v. Wiggins*, 747 F.3d 959, 963 (8th Cir. 2014) (holding the district court did not abuse its discretion by permitting the government to use transcripts to aid the jury in understanding conversations, especially where the court issued a cautionary instruction that the recordings, and not the transcripts, were evidence).

The United States anticipates providing proposed transcripts to defense counsel in advance of trial with the goal of reaching agreement. *See United States v. Gonzalez*, 365 F.3d 656, 660 (8th Cir. 2004) ("[W]e believe that whenever the parties intend to introduce a transcript at trial, they should first try to produce an 'official' or 'stipulated' transcript, one which satisfies all

sides" (internal quotation omitted)). In any event, the Government intends to use the transcripts to aid the jury in considering witness testimony but does not intend to submit them for consideration during the jury's deliberations.

### B. Request for *Frye-Lafler* Colloquy

The United States provided Mr. Avalos with a proposed plea offer in this matter. The government understands that on September 30, 2026, through his counsel, Mr. Avalos declined the government's offer. To ensure that the record is clear, the Government requests that a *Frye/Laffler* colloquy be held during final pretrial conference on November 2, 2026.

Dated: October 13, 2026

Respectfully submitted,

DANIEL N. ROSEN
UNITED STATES ATTORNEY

/s/ *David B. Green*

BY: JOSEPH S. TEIRAB
DAVID B. GREEN
Assistant United States Attorneys
District of Minnesota
david.green3@usdoj.gov
612-664-5600
Attorney I.D. No. 397477